I'm Peter Keith, I represent the appellants, Officer Peter Richardson, Officer Herman Diggs, and the City and County of San Francisco. I'd like to reserve three minutes for rebuttal. This is a consolidated appeal and it presents three fairly complex issues. Counsel, when I read the facts in this case, I kind of shared the feeling that you urged in your brief that there probably wasn't enough reason for the police to be there, but it looked to me like it wasn't the fault of the police, it was the fault of the neighbor. His wife wanted to go to sleep, she didn't like the noise, she had her husband call the cops, he called the cops, he told them a lie, said there was a big fight going on when there wasn't, just so the cops would break up the party and his wife would get to sleep. But you're not suing the neighbor, you're suing the police. Oh, Your Honor, I represent the officers. Oh, I'm sorry. I cover it, it's a very good question. I guess you probably agree with the way I portrayed it. I got the wrong side. Well, I mean, if we, I mean, I can start, I mean, let me outline the first three issues and then I can go immediately to the... because his wife wanted to get some sleep. How can that be considered by the judge in evaluating probable cause to go in when what the officers have is the 911 call? I mean, they don't, you know, what is, how do we get that, how is that relevant? Well, it isn't, it isn't, Your Honor. What is relevant is the information available to the officers at the time they receive the call. No officer receiving a police dispatch reporting a large fight going on at a location with chairs being thrown and police officers and people shouting to call the police, that's the only information the officers have. They have no way of telling whether that call is true or false and that's why we have an objective standard by which we judge the facts available to the officers at the time they make the decision to conduct a search. Well, what if the, okay, so you get a 911 call that says there's 20 to 25 people, that there's a big fight going on. These are plainclothes officers that are fairly nearby that are dispatched. They get there, they, well, I guess it's disputed, but somehow the door is open. Now, if at that point when the person that answered the door, it's not undisputed, I guess, the person didn't want to let him in. Well, Your Honor. But if they had turned around and got in their car and said, oh, I'm sorry, the person doesn't want to let me in, I mean, can an officer, you know, I'm sort of looking at it the other way, wouldn't then if someone was really getting the heck beat out of them inside and then the person died, who would be suing the police department? Well, that's precisely the problem here. The people who would be suing the police department would be the same people. They'd just have a different claim. They'd claim the police were negligent by not going into the house. And that's really the quandary that we're looking at here. I mean, initially on the issue of whether there's a dispute, this motion relies completely on plaintiff's own version of the facts. We've adopted those versions for the purposes of the motion and the appeal itself. Under plaintiff's version of the facts, the front door is open, one of plaintiff's friends testifies to that issue. It's in the record page. Well, you kind of, you take an approach first that because at the motion to suppress, you take an approach that they're essentially, that everything was determined there, that there was probable cause for the entry. When I look at what the trial judge did, the trial judge seemed to kind of go back and forth. But even the district court judge said all prongs of the collateral estoppel were met, right? That's correct. But then found the interest of justice exception? That's correct. What specifically, where do you think that the court went wrong on that? Well, the court went wrong in essentially assuming that it had unfettered discretion whether to apply collateral estoppel under the circumstances of a prior suppression ruling and what effect that has in a civil rights action. There is, while there is an exception, while there is some discretion to apply collateral estoppel, that discretion is limited. First of all, as the Supreme Court said in the Park Lane Hosiery case, we're very concerned when collateral estoppel is going to be used offensively for the various reasons. We don't want people hanging back in the first litigation waiting to see what happens. We don't want, and we prefer to have all the parties involved be around at the first hearing. And then there's another exception which allows discretion not to apply collateral estoppel. That's when you have an administrative agency making a policy decision that's going to affect on a legal question that's going to affect many parties that are not before the court. Under those circumstances, we do allow courts to weigh the circumstances and determine whether an injustice would result in the later proceeding if collateral estoppel applies. There is no such exception in this context. And again, it's important to remember that state law governs. The cases that mention this discretionary exception are primarily cases that deal with federal administrative law, which is a very different issue than an actual state court decision. Again, state law governs here. How long was there? I'm wondering how long the window was open for an appeal of the adverse state decision on suppression. I know the state judge denied the motion to suppress, and then subsequently the case against the defendants in the criminal case, the plaintiffs here, was dismissed. How long a window was there between the denial and the dismissal? Well, the trial was delayed several times, and the case wasn't dismissed until a jury was actually sworn in. So there was a delay of at least a few months, and the time for an appeal had run. I don't know if you understood my question. Sometimes the judge announces his rulings on the motions at the time that the case is set for trial. So you go in there Monday morning at 9. He says, I deny the motion to suppress. We'll unpanel the jury. Theoretically, if you had a big enough law office, you could appeal in between, but hard to do. Other times there's a delay. If I understood you right, you said there were several months between denial of the motion to suppress and the beginning of jury selection or the day set for jury selection when the case was dismissed. Is that what you said? Yes. Okay. Was the motion to suppress at the preliminary hearing, or was it after that? It was at the preliminary hearing. There's a separate motion to suppress made by the now appellees. Okay. So that was after the parties had been bound over. That's correct. Well, assuming that you get the ‑‑ well, okay, first you have your argument in terms of what was found in terms of probable cause gets you in the door. Then you make a secondary argument, if I understand it, that even if that is not binding, that there was probable cause on the undisputed facts and going in sociere and there was no constitutional violation. But even if there wasn't, then a reasonable officer would have thought that. So that's your analysis, right? Well, yes, Your Honor. And keeping in mind that there's really two distinct legal issues there. The first case is that there's collateral estoppel because the factual disputes were actually before the court. Well, let's just say we jump over that. That's not the end of your argument. Am I correct? That's correct. There's two bases for reversal on the search claim. And the other one is a qualified immunity claim where we accept the plainest version and say even under those facts, when police officers receive an urgent 911 call like this, we expect them to go into a house and follow up on the emergency. And there was a reference earlier to some of the facts being disputed. Now, I want to be clear on this. We think that the contents of the 911 call were enough to mean that the officers were proper in going into the home just to see what was going on. Suppose the officers had arrived and there were complete silence in the house. Well, there could be someone inside injured from the fight who's hurt and who needs help. Or there could be loud voices outside. That could mean that the fight is still going on. The point is that we have an urgent report of an emergency situation inside a house where someone could be injured, where there's been a report of someone yelling to put down the chair, to call the police. We expect officers to be able to go in to respond to a 911 call like that and simply see what's going on, and that's what, under plainest version of the facts, happened here. Let's say you get through the door. Then you have the next issue of the people getting arrested. I mean, they're fairly, well, I guess even that there are facts that there's, it's disputed whether the officers identified themselves. Not as to Javier Antezana. What is, it is undisputed that the officers. Because he didn't want the officers to come into the house. He said you don't need, he's the guy that answered the door. He asked them, yes, he asked them to go outside. And the door, again, he's the first one who confronted them in the house, and he asked them to go outside. Then you have the charging that occurs after that, and then it's disputed whether they knew they were officers. The officers said they had their badges on the outside and all of that. So then you've got force used to arrest those individuals, whether it's excessive force, right? Incident two, they're taken down, one by a bear hug, and the other said he doesn't know exactly what happened, but he said something like they do what they do pretty well, and they got me down on the ground. Then you have, and let's say you even get through that. Then you have the next issue where one of the plaintiffs claims to be beaten up after he was arrested by unidentified officers, correct? That's correct. Well, neither of the officers here. We've ruled out that either of the officers here. Right. So you have, it's Richardson, and is the other one? Diggs. Diggs. Okay. So there's plaintiff's testimony that Richardson and Diggs were not involved in that last altercation. The plaintiff doesn't know who was involved. A witness, his own brother, testified that neither of these officers were involved, and both of the officers testified they were not involved. All right. So let's assume that you get to that point. Are you claiming that the unidentified officers, it would seem to me that there's disputed facts as to what happened at that point. Let's just say you get Richardson and Diggs out, but then you've still got this last incident where the plaintiff is claiming that he was beat up after he was arrested and I think going back to the police station, too, or things along those lines, right? Right. There is a claim of various things that happened. Okay. And we have to, he gets inferences in his favor. I'm sorry? He gets inferences in his favor along those lines. How do you get rid of that last incident? The incident at the police station. Right. We're not speaking to. These were motions for partial summary judgment to essentially dispose of everything that happened in the house. But doesn't he also claim that he was beat up at the scene, too, by the uniformed officers? Yes, he does. But those officers are not defendants in this case. They haven't been identified. They haven't been sued. And in a 1983 action, you need to sue the individual officer who you claim has violated your civil rights. So whether. Okay. We have the city and the county. Let's assume that those unidentified officers, that they've created a dispute. There's a triable issue there as to whether he was beat up there. The city's and the county's liability, how are they affected by that, that he can't identify him? Well, if the plaintiff could establish Manel liability, then. Plaintiff what? If the plaintiff could establish Manel liability for a policy or practice of the city and county that led directly to his being beaten up by unidentified uniformed officers, then theoretically he could establish liability on the part of the city. What evidence is there for that? What evidence in this record is there establishing that? Oh, on policies and practice? None whatsoever. Okay. Now, on the. Now, I want to make clear again that as far as what happened in the house, all of the testimony, in this case, all of the evidence before the court is drawn from the plaintiffs themselves. We have accepted that there are no factual disputes about what happened in the house, so there's no reason why the court can't rule on the legal issue of whether it's proper for an officer who's been attacked to arrest the person who's attacking him. And, again, it's undisputed. The plaintiffs don't dispute that they attacked the officers. They simply say, well, we didn't know who they were. Again, this is an issue that's sorted out at a criminal trial. An officer isn't there to make a judgment of someone's ultimate criminal liability, and there is no way for an officer to know the state of mind of someone at the scene. What the officer knows is that they've been attacked, an assault has been committed, and the arrest is proper on that basis. So it would be your point that that issue relates to the fact that would be why they would be not guilty of assaulting an officer, because they didn't know it was an officer, but it wouldn't go to their qualified immunity claim. It's certainly not, because, again, we're evaluating whether there's probable cause to make an arrest and whether there's qualified immunity if probable cause was absent. And, again, that's a very different issue from an ultimate criminal conviction. So I do want to address some of the issues. Is there anything in the record about why the case was dismissed? No. I didn't see it. I didn't remember anything in the briefs, and I haven't read the excerpts on it. No, there is nothing in the record. The district attorney simply, as a matter of their discretion, dismissed the case. There's no information in the record about why the district attorney did that. It just says when it happened. Apparently, I think it was at trial. There were two witnesses that testified, it sounds like, in some pretrial capacity. The jury had not been impaneled, so the jury had not heard any evidence, and that's the posture as to when it happened, right? That's correct. And, again, there's no evidence in the record as to how anything influenced the prosecutor's decision to dismiss. I couldn't understand that. I never heard of witnesses testifying before the jury is impaneled. Apparently, in the criminal courts, they allow witnesses to do this to preserve their testimony in case they're not around at the time of trial. And so this was a procedure that the criminal court followed. So this was kind of like a deposition? Well, except there was an opportunity for cross-examination, and it actually did occur before a judge. Now, I do want to address some of the cases that deal with what officers are supposed to do when they receive a 9-1-1 call. Is there a record of what those two witnesses said? I don't believe that that testimony is part of the record. Depositions are always with an opportunity to cross-examine, and occasionally they're in front of judges. Yes, but, again, this is part of the record of the criminal court, and while it's in the criminal court file, it's not part of the record that's before this court. It's not part of the record here. Right. Again, because the reason why we presented the record of the criminal court was to highlight the issues that were raised and addressed and litigated at the suppression hearing, and those witnesses did not play into what happened at the suppression hearing. So, Your Honors, I would like to go over many of the cases that have dealt with 9-1-1 calls in the qualified immunity context, and it's important to remember that we need to consider the state of the law at the time that the officers engaged in the challenged activity. This is a search that occurred in 1999, and we have to ask ourselves, was there clearly established law at that time that gave the officers notice that they were not authorized to conduct this search? Now, there was no such law. And, moreover, if you look at the Ray case from the California Supreme Court, which outlined the emergency doctrine, this case had just recently come out and had allowed officers, had in fact commended officers, who went in to investigate a call of an apartment door being open and the house being in shambles. They had no other information about a pending emergency happened. That's all they knew. And the California Supreme Court said, yes, under those circumstances, an officer should go right into the house. And if you look at decisions of court subsequent to 1999, there have been many decisions that have come down saying that a 9-1-1 call alone communicating a current emergency is enough to justify entry. Which don't matter to our decision, or are you talking federal decisions from the Supreme Court or our court that do? Well, Your Honor, the court is supposed to look in making a qualified immunity determination whether the law is clearly established. The court is supposed to look at case law from states and from other circuits, as well as from the Supreme Court, in determining whether the right that the plaintiff claims is clearly established. Are you talking about state law or federal law when you say there are a lot of cases? Oh, federal cases from other circuits. You're right. I mean, one of the things the court is supposed to look at in determining whether qualified immunity exists is that even if there was a violation, what was the state of the law? Are there conflicting decisions in other circuits? That's what this court did in Robeson v. Solano County. The court said, well, we think it could be excessive force for an officer simply to point a gun at somebody. That alone could constitute excessive force. But then the court looked at decisions of other circuits, saw that other circuits had gone the other way, and said, well, given this conflict in the law, we can't say that it's clearly established. So the officers still get qualified immunity. And in this case, if you look at the 9-1-1 case law in other circuits, Second Circuit and the Seventh Circuit, the Anthony case, the Holloway case, these are all cases that said a 9-1-1 call alone, even a 9-1-1 call that turns out to be false later, is enough to justify the officers making an entry. Thank you, counsel. Good morning. Good morning. I'm Nathan James. I represent the appellees and residents of the house. You know, my first question to you, because I mistakenly asked it to your adversary. Yes. Could you repeat it, please? I can easily see why you might sue the neighbor for telling a lie that caused all this trouble for your clients. But from the police standpoint, they've got a call, albeit based on a lie, they don't know it's a lie, that there's a big fight going on, not just a fight on the television set, but a real live fight between the participants, a couple dozen people, chairs being thrown. Why shouldn't they, even leaving aside collateral estoppel, why doesn't the special exigency of that kind of 9-11 file justify barging into the house and getting everything under control while they see what's happening? Because the law doesn't provide for police officers' unfettered discretion to go into a house on a 9-1-1 call. And in this case you don't need unfettered discretion on any 9-1-1 call. You've got a particular call here with the description of this violence. Correct. But this call was a false alarm. It's like the neighbor lied so his wife could get to sleep. Correct. But the police don't know that. The police don't know that. But when they get on the scene, there's no indicia of anything happening consistent with the 9-1-1 call, nothing. Well, but there are a lot of people there. There are a lot of people there. There are people in the house. The officers do say they hear noise, but even just put that aside because there's conflicting on that. But there still are 20 to 25 people there, right? And for all they know, there's a guy bleeding and unconscious on the floor as a result of a successful attack on him after the fight. Right. But the noise coming from the house is not consistent with the fight. There's nothing. But it could be over. I mean, you get called for violence, and by the time you get there, suppose it is kind of quiet. Maybe the violence was successful. Well, all the cases for these types of situations, police officers are knocking on the door. Police officers are announcing themselves. Police officers are investigating before they go into the house. There was no investigation at all before they went into the house. Our contention is they just walked right into the house, and my clients thought this was a home invasion. But if you get the police get, it's not like the police did this on their own. They get a 911 call. It's a distress call. It's immediate. They get there. I mean, let's assume that either, like it was domestic violence, and someone comes to the door and says, Officer, you don't need to come in. Just leave. Well, and so then the woman gets killed inside. Or let's say there's someone on the floor that's dying. There's no doubt in my mind that the police department would then be looking at a lawsuit that they didn't do their job. They didn't go in and at least check on the well-being of the individuals. So it's one of those darned if you do, darned if you don't. When people call the police, they don't expect them to come to the door and when they've reported that there's a fight inside and say, oh, well, I think I'll just go back to my car and I'll go back to the station. Well, that's the point. I mean, if we ask the police to come out there, then if they don't check on the well-being of people, what are the police there for? Well, my clients didn't call the police, as the court well knows. And I'd like to – Well, the person doing the beating up usually wouldn't. Correct. You know, come out to my house and get me. But ironically enough, people who were in the house after these police officers came in the house wanted to call the police because they thought the home was being invaded. Look, we are required by constitutional law decisions of the Supreme Court to look at this from the viewpoint of what the policeman knows. But it's tested objectively. And if you take a look at the Hopkins case that this court decided back in 1991, Mr. Keith cited a case from 2004, which is the Brooks case. But if you look at the Hopkins case, the Hopkins case is a 1983 case. And Judge Callahan, you raise a good point asking me about a domestic violence call. Well, in the Hopkins case, there was a domestic violence call. It was an anonymous tip, just like this was. The officers went to the house. They knocked on the door. They identified themselves as police officers. They spoke to the man at the door. When they went into the house, the court held that the officers didn't have probable cause to go into the house based on this anonymous tip. Was it a 911 call or an anonymous tip? It wasn't a 911 call. It was an anonymous tip that someone was getting beat up in the house. Okay. But isn't that a little bit, isn't that distinguishable from a 911 call that they're getting the call right in right now, they're going out right then, as opposed to me calling the police department and saying, well, you know, my neighbor's beating up his wife. That doesn't mean it's happening right then. No, I think it's a distinction without really a difference, because what we're looking at is what's going on inside the house. There's a report of people being beat up in the house, whether it comes from a 911 call or anonymous tip. We're looking at ---- Well, but that's just counterintuitive to say it doesn't matter when it's happening, because the whole point is if it's happening right now, then you've got to be concerned about people's safety. If it's happened at some point, that, you know, you can't just go in people's houses. My understanding of the Hopkins case was that it was happening at the time that the anonymous tip was given. So I think there's case law that supports my client's position, which is that police officers have to point to specific and articulable facts before they can go into a house. Otherwise, anybody can make a fake 911 call, and everybody's house could be subject to invasion. But a lie in a 911 call is a specific and articulable fact. But the police officers have to point to specific and articulable facts that would be consistent. When they get out to the scene, they have to point to specific and articulable facts at the scene that are consistent with the 911 call. Otherwise, anybody can make a 911 call and say, How do you investigate the truth of a 911 call when it's 911 by its very nature? You do a two-hour investigation. 911's over by the time you get there. No, when you get out to the scene, the police officers are required to not. The police officers are required to announce themselves. These were plainclothes police officers. They just walked right into the house, period. That's what our version of the facts are. They just walked right into the house. My client said there was a home invasion. You know, if there still was the kind of noise going on that the police say was going on, then the police could have knocked and announced, and the people inside the house would never have heard them. Well, I'm not so certain that the noise that the police officers maintain was going on inside the house is nondisputed. We dispute the characterization of the noise that the police officers say was going on inside the house. They say they were screaming and yelling. That's disputed. That's disputed by the residents. It's disputed by four other independent witnesses. So when the police officers get out to the house, dark intentions, nothing was happening. This was a total false alarm, just like firefighters who might get out to a scene where there's no fire, there's no smoke, there's nothing. Nothing's going on. You have a peaceful gathering of people. So you think if the firemen get called, there's a fire, they get a 911 call, there's a fire at 1500 Oak Drive. They go to 1500 Oak Drive. They don't see a fire. They knock on a door. Nobody answers. They should go away. They shouldn't break open the door and look for a fire. I think before the, first of all, police officers, I mean, firefighters are different than police officers, but I think that before they go into the, I know I did, but before, I did. That's why I asked about it. That's a good question. I once had a plaintiff's case where I represented somebody. The baby died from the smoke. It was pretty quiet. No baby crying by the time the firemen got there. Well, to answer your question, I think before the firemen could go into the house, they should have some indicia that there's a fire going on. I mean, something. I mean, otherwise, I mean, let's put it out there. You have somebody making a 911 call. So it's always the policeman's fault. It's not the people that lie to them. Well, the people who lie to them is the neighbor. My clients didn't lie to the police. There was nothing going on in that house. I know it was the neighbor's. Right. So I'm saying, that brings me back, it's the neighbor's fault that the cops barged in on the party. I can't see why it's the cop's fault. Because the police officers set in motion everything that happened that evening. Now, the neighbor set it in motion with a phony 911 call. Correct. So his wife could get to sleep. Correct. But once they get out to the house, there's nothing happening that's consistent with the fight. And they don't knock on the door. They don't announce themselves. They don't tell the people why they're there. They don't identify themselves as police officers. I mean, otherwise. Let me ask about something else and come back to it. The collateral estoppel. It looks to me like you had several months to appeal the adverse decision in the motion to suppress. Is that correct? I wasn't the criminal counsel. I don't care. When I say you, I mean the party. I believe it was a few months. Yes. There was a few months. Yes, I believe there was. So why shouldn't there be collateral estoppel? Because the trial court at the criminal level knew that this case was going to go forward, and the trial court at the criminal level actually said the issues that are raised by the defendants in this criminal course are going to be tried again. He didn't want the jury to have a fractured view of the incident. Well, that doesn't mean that he didn't deny the motion to suppress. It just means that as a matter of the evidence law, he's going to let in the res gestae. Correct. He was going to allow the observations of the police officers in. But the reason why I don't believe it. What he's saying is I deny your motion to suppress, I don't think it's well-founded, and it wouldn't much matter anyway because as a matter of res gestae. I'll quote what the trial court said was. What page are you looking at? I'm sorry. I didn't note it. Well, he said that since this case is going to go. I think you're looking at 307. 307. Is that right? First, he says defendants had standing. And then he says he didn't find some distinction that had been drawn in the brief persuasive between pulling a gun versus engaging in an altercation.  So I don't think that's true. So I don't see a basis for suppressing evidence in this case. Correct. But he also said that since this case is going to go forward. What is Pittman incidentally? Sorry? What is Pittman? Pittman is a case that says that when police officers observe other officers getting assaulted and battered, they have a right to testify to the evidence that they observed of this assault and battering, even though they may be in a place illegally. The suppression rule doesn't apply to it. But I want to go back to what Judge Mahoney said, because he said that it seems to me that the trier of fact ought to hear the observations in their totality for whatever worth they are and whatever weight the trier of fact wants to give, certainly at trial. And then he said the very issues that the defendants are raising now will be at issue because they will go directly to the fundamental issue of whether the officers were actually acting under color of authority or, in fact, were acting without authority to be there. So what? He goes on. This ruling goes on for several pages after that. He says policemen testify consistently and all this. At the end of the whole thing, the plaintiffs in this case, defendants in that criminal case, lost, and they had several months to appeal. And if the judge's reason was, well, jury's going to hear the same thing, it would be nice for the jury to hear it so I'm not going to suppress the evidence, then it would be a bad reason to deny a motion to suppress. They could have appealed. So why shouldn't they be collaterally estopped? Because collateral estoppel, the four elements of collateral estoppel, although being met, there is an interest of justice exception to the collateral estoppel. Yeah, but why is it in the interest of justice? Because if my clients ñ let's back up for a moment. The reason why the police officers came into the house, according to the police officers, was because they saw a fight between two Latin males while they were at the front door. That's their reason for coming into the house. The fight behind my client, Javier Antezana, supposedly, that they came to the front door. The police officers say they knocked on the door. The police officers say after the door was opened and after they announced themselves and identified themselves, which we dispute, they say they see a fight going on behind my client. And that's the reason why they go into the house. But then the judge goes out to the scene, looks at what the officers could see from that location, and then the judge denies the motion to suppress. And there was some language in there about the officers had the right to go in. The court did say something like that, too. So why are you not ñ why are you not bound by that? Because once there's a determination that there was a fight in the house that my clients maintained did not occur between these two Latin males, once that determination is made and the officers are in the house legally, then all the other claims go by the wayside. Because now the officers are in the house legally, and my clients supposedly are unable to defend themselves. Well, is it your position if we find that the officers legally entered the house, is it your position that the rest of it falls, or is there anything? No, I believe the rest of it falls. I believe the rest of it falls. So it all hinges on the entry? It all hinges on the entry because my clients are maintaining there was no knocking, no identification, no announcing their purpose for why they were there. And at that point, if the court finds that the officers are legally in the house, then my clients are supposed to obey what police officers tell them to do. Wouldn't ñ it seems to me your clients would have had to persuade the state judge that the policemen were lying when they said they saw two Latin males fighting. They tried. The person that opened the door. They tried to do that. Well, they tried, and evidently they failed. I mean, the judge could have said, I think the policemen are lying. I don't think they knocked. I don't think they saw anyone fighting. I don't think anyone was fighting. I think they just barged in here for no good reason, and then you would have won the motion to suppress. But it wouldn't have done any good anyway because the Pittman court would have allowed the police officers' observations in anyway. Well, that would have mattered to the criminal case. No. But it would ñ but the fact of the matter is on the motion to suppress, the judge did not make the finding of fact that the policemen were lying about seeing the two Latin males fighting. No. He wanted the jury to make that decision. Yes. He wanted to make the ñ and I found where I made the cite. It said 308. Yeah, I read that. Right, okay. And he wanted the jury to make that finding. He wanted the jury to make the finding whether or not the police officers were acting within or without their authority. Counsel thought they could get a favorable finding and could have asked for one. Right. Counsel could have asked for findings on any matters if you do that in court. Judge could have a finding on whether ñ That's true. They did not do that. But, I mean, the reason why collateral estoppel should not apply is because, just as Judge Ilston at the district court found, this is a very, very exceptional case. And in exceptional situations, this interest of justice exception should apply. And there's no case that says the interest of justice exception should not apply when a plaintiff is attempting to rebut collateral estoppel. There's no case that says that. One more chance to get back to what's really on my mind on this case, in case you thought of something else. I'm thinking it happens when you stay in hotels from time to time. Room next door, they're playing the TV loud at 1 in the morning, or they're making a huge amount of noise at 5 in the morning. And you might call the front desk and say, could you give a call to the room next door to mine? You're making a lot of noise. No problem. But if you call the front desk and say, I hear a woman screaming, and it sounds like fear, it sounds like somebody's getting raped or beat up in the room next to mine, I expect the security people to barge into that room. And if it was all a lie, it's the person who called the desk's fault, not the people who barged in's fault. Maybe. I mean, this is the same case. Yeah, but, I mean, when the security people are going to come to the door, they're going to knock on the door. They're going to identify themselves as police officers. No, they're not, if there's that kind of call. They're not. I don't know. I beg to differ, Your Honor. I think that the law requires that the – Hey, sir, are you raping a woman in here or beating her up? We'd like to ask you some questions. Just like all the other cases have showed that officers investigate and knock and identify themselves and show the people that they are officers. I mean, but this doesn't happen here. There was no indicia of a fight. You would think a fight between 20 and 25 people, you'd hear it for blocks. There'd be people scattered along the sidewalk because of all the commotion coming from the house. There was nothing of that. And at the same time, my clients, peaceful citizens in a house, their house is invaded by plainclothes officers. And going back to my example, if the court holds that the police officers had a right to go in on the 9-1-1 call alone without any corroboration of what was going on in the house, then any person can make a 9-1-1 call on their neighbor, a fake 9-1-1 call like happened here, and police officers would be justified in going into the house under all circumstances. And that's just not what the law holds. The law doesn't hold that. Our homes are sanctity. We can't have police officers going into a home based on a 9-1-1 call. Do you have a good case for that? Pardon me? Do you have a good case for that? A 9-1-1 call case? Well, yeah, I cited a case. I cited a case, the SLED case, I believe it was, SLED v. Lindsay, where the officers went into a house without identifying themselves and without any addition of authority. Okay. Thank you, counsel. Thank you. Antizana v. Richardson is submitted. I think he thought he had a couple of seconds. I thought I had quite a few seconds over time. Oh. I didn't think I went over, but maybe I'm mistaken. Give him one minute. Okay. Thank you, Your Honor. First of all, on the issue of the basis for the state court's ruling, if you look at page 311 of the excerpts of record, the court actually says, I actually believe, based on the record I have before me, including visiting the scene, that there was probable cause for the officers to go in. Now, Pittman would have provided additional ground for the court to allow, to deny the suppression motion. And under California law, when there's more than one ground that supports a ruling, both of them have collateral estoppel effect. So there was an actual finding of probable cause. Let me ask you, just really quickly, because I don't want to take you over, but Appellee's counsel said it all hinges on whether it was legal to go in, and then the rest, it rises and falls on that. Do you agree with that analysis? Because your brief kind of goes, continues on in terms of the entry, then the forced incident to the arrest, and then the subsequent activity. Well, Your Honor, this court has made clear in the case, for example, Byer v. City of Livingston, that the court has to look at each cause of action separately. And now from the resident's perspective, perhaps they feel that, well, the officers were in the house legally. We're going to have a hard time explaining our actions. And I agree. On the other hand, whether or not the officers were legally in the house, they were assaulted by these men. That is undisputed. And moreover, it's undisputed that the officers identified themselves to Javier Antezana, one of the residents and Appellees, and that they did this. He was the first person who confronted them when they came into the house. And it's undisputed they identified themselves to him. And so this issue of whether they announced themselves is simply it's not disputed. And finally, on the Hopkins case, I don't have anything to say about that because it wasn't in the other side's briefs and I haven't reviewed it. Thank you, Counsel. We have students. I'm just noticing a whole bunch. I had no idea who they are. It's like, well, they sort of look student-ish. Do you think it's a classroom? I don't know. It's just a whole bunch that are leaving now.
judges: Oakes , Kleinfeld, Callahan